No. 82,890

In the Matter of MICHAEL JAMES FRIESEN, *Respondent.*

(991 P.2d 400)

Opinion filed October 29, 1999.

*Edwin A. Van Petten,* deputy disciplinary administrator, argued the cause and was on the brief for petitioner.

*Mark L. Bennett, Jr.,* of Bennett & Dillon, L.L.P., of Topeka, argued the cause and was on the brief for respondent, and *Michael J. Friesen,* respondent, appeared pro se.

*Per Curiam:* This is an original proceeding in discipline filed by the Disciplinary Administrator's office against Michael James Friesen, an attorney admitted to the practice of law in Kansas.

A formal complaint was filed against respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC) 1.2(a) (1998 Kan. Ct. R. Annot. 285) (scope of representation), 1.3 (1998 Kan. Ct. R. Annot. 288) (diligence), 1.4 (1998 Kan. Ct. R. Annot. 296) (communication), 1.5(c) (1998 Kan. Ct. R. Annot. 304) (fees), 1.6 (1998 Kan. Ct. R. Annot. 309) (confidentiality of information), and 8.4(c) (1998 Kan. Ct. R. Annot. 386) (misconduct).

A formal hearing was held before a panel of the Kansas Board for Discipline of Attorneys. The panel established the following facts by clear and convincing evidence:

"On April 4, 1996, Respondent accepted employment by Cathryn Y. Westerhaus to recover damages she alleged she received in a slip and fall accident on the property of the Dairy Queen in Liberal, Kansas, on April 5, 1994."

Friesen used a contingency fee contract.

Although Westerhaus told Friesen on several occasions that she did not want go to trial, on April 4, 1996, she verified a petition to file suit against the Dairy Queen. Within a few days of verifying the petition she told Friesen that she did not want to pursue the action but then agreed that she would as long as there was no trial.

On March 26, 1997, Westerhaus wrote the following letter to Friesen:

"Dear Mike:

"When I signed the corrected interrogatories in your office yesterday, that completed all of the information you need to pursue a settlement in my behalf. If you can negotiate a settlement without further involvement on my part, well and good. But if the case goes to trial, it will be without me as a witness. Further, I want to reiterate my requirement that there be absolutely no publicity in regard to my case against Kim and Debra Yount, Liberal Dairy Queen.

"Good luck!"

On May 31, 1997, Friesen wrote a letter to Westerhaus that indicated settlement and dismissal were both still in the picture:

"Dear Cathryn:

. . . .

"Enclosed please find a notice to take your deposition. If you would prefer to do this at a different time, please advise.

"I have given some thought to amending upwards our request for damages. We can do this at anytime; however, it would be advisable to do it before your deposition. I am not locked in to the $15,000.00 amount. I tried to give you my best guess, as to what the case might be worth at settlement, based upon other similar cases in western Kansas. I am not opposed to going for more.

"Please let me hear from you as soon as possible. If you still intend to dismiss this case, we need to do it before Friday, June 6, 1997."

Westerhaus balked at answering interrogatories and told Friesen to conclude the case without her further involvement. She refused to appear for a deposition and "made it clear she wanted her case dismissed."

Westerhaus wrote to Friesen on June 4, 1997:

"This is a response to your letter dated May 31, 1997. . . . I want my case against Liberal Dairy Queen dismissed. My decision is in keeping with my statements to you at our conference in your office, April 4, 1996. .

"I should point out that on the same date, you assured me that the case would never go to trial. Further, you promised that the matter would be settled within the next two or three months and without my having to do anything more. So much for that!"

On June 8, 1997, Friesen wrote to Westerhaus:

"In any event, pursuant to your instructions, I have called off the Dairy Queen's deposition of you and have advised their lawyers of your intent to dismiss. I believe that it would be only fair that they reimburse you for any unpaid medical expenses

as well as some payment for my time over the course of the last year—albeit a pittance—something is better than nothing. If I get 'something' you do not have to accept it, but I will proceed to conclude this case as set forth above and will return your original documents under separate cover."

Westerhaus testified that she did not respond to Friesen's June 8 letter.

The panel stated:

"[T]he defense agreed to pay, and Mr. Friesen agreed to accept, $2,400.00 on behalf of Ms. Westerhaus. Mr. Friesen neglected the detail of obtaining Ms. Westerhaus' consent to receive money as opposed to receiving nothing for dismissal of her claim. Both Ms. Westerhaus and the Disciplinary Administrator are incensed by this failure. The Disciplinary Administrator charges that such conduct violated KRPC 1.2(a) in that Mr. Friesen exceeded the scope of his representation by settling the case rather than just dismissing it. We conclude that the Disciplinary Administrator is right, and if the matter ended there, we would so find and caution Mr. Friesen to never again accept money for a client who does not want it."

## The panel made the following conclusions of law:

"23. Respondent violated KRPC 1.2(a) in that he exceeded his authority from his client in negotiating and accepting a settlement [including endorsing his client's name on the settlement check] without authorization and after the client had directed dismissal of the case.

"24. Respondent violated KRPC 8.4(c) in presenting his client with a blank release when the amount of the settlement was known and in asking if she would accept $500 when Respondent and opposing counsel had agreed upon a $2,400 settlement amount.

"25. Respondent violated KRPC 1.5(d) in charging a fee on recovered expenses and in failing to advise the client of her right to have the fee reviewed by the Court. We note, however, that the client was given such advice in the original employment agreement."

## The panel found the following aggravating and mitigating factors:

"23. The Respondent has one prior disciplinary offense.

"24. The Respondent acted for a selfish motive in seeking a settlement in the Westerhaus matter (Case No. A7044) when his client wished the case dismissed.

"25. The Respondent refuses to recognize the wrongful nature of his conduct except that he admits a 'technical violation' of KRPC 1.5.

"26. The Respondent has substantial experience in the practice of law and knew or should have known the consequences of his decisions.

"27. On the issue of mitigation the Panel finds the prior discipline to be relatively remote."

Respondent takes exception only to the panel's findings and conclusions that he violated KRPC 1.2(a).

The panel made the following recommendation:

"In Case No. A7044 we have a client who could not be pleased and a lawyer who took improper action for the dual purpose of benefiting the client and to make sure he received some fee for the time the client's position consumed. On the other hand, Respondent knew when he was retained that the client expected unreasonable results without a willingness to do what was necessary to present her claim. The Panel finds no analogous ABA standard but finds § 4.63 applicable and recommends that the Respondent be publicly censured for the rule violations found in this case."

KRPC 1.2(a) provides in part that "[a] lawyer shall abide by a client's decisions concerning the lawful objectives of representation, . . . shall consult with the client as to the means which the lawyer shall choose to pursue[, and] shall abide by a client's decision whether to accept an offer of settlement of a matter."

Friesen contends that he had authority to negotiate and accept a settlement on behalf of his client. He directs the court's attention to the evidence that on several occasions in March 1997, Westerhaus authorized settlement. He also highlights Westerhaus' failure to respond to his June 8, 1997, letter in which he indicated that he would seek a settlement and dismiss the case. He disregards Westerhaus' letter of June 4, 1997, in which she told Friesen to dismiss the action but did not mention settlement.

Westerhaus' letter of June 4 does not expressly rule out a money settlement. Based strictly on her letter, an argument could be made that her attorney, who earlier had been authorized to settle the action, would not necessarily interpret the letter as a retraction of that authority. The argument would be based on Westerhaus, as a layperson, not clearly distinguishing between settlement and dismissal so that her concept of dismissing an action might include the expectation of settlement money. In this case, however, Friesen's June 8, 1997, letter to Westerhaus belies the argument. In that message, Friesen signified that he did not believe he was authorized to negotiate a settlement by advising Westerhaus that he

was trying to get some settlement money *but that she did not have to take her share if she did not want to*. At the time he wrote the letter, Friesen was not abiding by what he believed his client's decision was on the question of settlement. Moreover, Westerhaus' subsequent complaint and her refusal to accept the money are evidence that Friesen was not mistaken in believing on June 8 that his client did not want a settlement negotiated.

Friesen contends that the recommended disciplinary measure is not justified in that there is no evidence of bad faith in his negotiating a monetary settlement of his client's claim. Friesen states that he was acting in his client's best interest in obtaining reimbursement for her medical bills. As if the two were mutually exclusive, he further asserts that his acting in Westerhaus' interest establishes that he did not have a selfish motive.

This was not a situation, however, in which Friesen's financial interest was separate from that of his client. Instead, due to the contingency basis for his fee, Friesen's financial interest depended entirely on his securing a monetary award or settlement for his client. Obtaining a settlement served Friesen's self-interest, even if it also benefited Westerhaus.

ABA Standards for Imposing Lawyer Sanctions, Black Letter Rule 2.5, p. 8 (1991), provides: "Reprimand, also known as censure or public censure, is a form of public discipline which declares the conduct of the lawyer improper, but does not limit the lawyer's right to practice." The Commentary to Rule 2.5 includes the following:

"A reprimand is appropriate in cases where the lawyer's conduct, although violating ethical standards, is not serious enough to warrant suspension of disbarment. A reprimand serves the useful purpose of identifying lawyers who have violated ethical standards, and, if accompanied by a published opinion, educates members of the bar as to these standards." p. 22.

We accept the panel's findings, conclusions, and recommended discipline.

IT IS THEREFORE ORDERED that Michael J. Friesen be and he is hereby disciplined by published censure in accordance with Su-

preme Court Rule 203(a)(3) (1998 Kan. Ct. R. Annot. 210) for his violations of the Kansas Rules of Professional Conduct.

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to respondent and that this order be published in the official Kansas Reports.